J-A12004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.G.G. | : | |
| | : | |
| Appellant | : | No. 3825 EDA 2017 |

Appeal from the Order Entered October 31, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2017-3205

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                                    **FILED JULY 10, 2018**

S.G.G. ("Father") appeals from the order entered October 31, 2017, awarding primary physical custody of the parties' son, S.G.G., to J.J. ("Mother").  We affirm.

Mother and Father met while attending college in Hampton County, Virginia and S.G.G. was born in Pennsylvania in August 2009.  Five months later, Mother returned to Virginia to live with Father.  Their relationship deteriorated approximately one year after her return.  During 2013, Father moved to Brooklyn, New York, where he remains.  Mother stayed in Virginia, and commenced child custody proceedings against Father.  Those proceedings culminated in a series of custody orders awarding Mother primary physical custody of their son.  The most recent custody order was entered on August 16, 2015.

In March 2016, Mother moved from Virginia to Pennsylvania. Although neither party remained in Virginia at that time, on May 4, 2016, Father filed in Virginia a *pro se* motion to amend the August 10, 2015 custody order. On November 3, 2016, Virginia's Hampton Juvenile and Domestic Relations District Court entered an order that modified the custody arrangement slightly, but maintained primary physical custody of S.G.G. with Mother. That order included a provision relinquishing jurisdiction over the matter because neither party continued to reside in Virginia.[1] Father appealed the domestic relations court's order for *de novo* review in the Hampton Circuit Court. At the conclusion of the ensuing evidentiary hearing, the Hampton Circuit Court issued an oral ruling that awarded Mother primary physical custody of S.G.G.

Consistent with local practice in Hampton County, Virginia, on July 11, 2017, the attorneys for Mother and Father appeared before the Hampton Circuit Court so that it would sign a written order memorializing the oral ruling that was issued on April 21, 2017. The Hampton Circuit Court immediately entered an order that reflected its decision to grant Mother primary physical custody of S.G.G., and remanded jurisdiction of the custody dispute to Pennsylvania. However, upon review of Father's intervening motion for

---

[1] On April 13, 2017, Mother sent a letter to the Northampton County Court of Common Pleas, asking "to have this case/order transferred to Northampton County, Pennsylvania where we now reside." Letter, 4/13/2017. The trial court registered the November 3, 2016 order in Pennsylvania, but took no further action.

reconsideration of the court's oral order, which assailed Mother for moving the child a short distance within Pennsylvania without notice, the Hampton Circuit Court reversed the order entered minutes earlier. Without considering any additional evidence, that court issued an oral directive that awarded primary physical custody of S.G.G. to Father.[2]

Mother filed a *pro se* motion for reconsideration of the Hampton Circuit Court's oral ruling, asserting that she did not receive proper notice of the July 11, 2017 proceeding. Father countered with a motion to show cause, which revived his prior claim that Mother's move was improper. On August 31, 2017, the Hampton Circuit Court entered the written order that formally awarded

_____

[2] During the subsequent custody proceedings in Pennsylvania, the trial court indicated that the Pennsylvania custody master called the Hampton Circuit Court and inquired about the volte-face. N.T., 9/19/17, at 91. The trial court reported the Virginia court's response as follows:

> Th[e Virginia] judge sat on th[e] Order for a long time, and the lawyers down there started complaining to his office about it. So he sent it around to get a signature, and then he was going to enter the Order. And then he directed the lawyers to come into his office on July 11th, and then he filed this Order on July 11th. And then without notice to [Mother], he made a record with those other lawyers, and then he changed his mind with this, and he entered a new Order without taking any additional testimony or having the child in front of him[.] [A] child that he recognized in all his Orders belongs in Pennsylvania. And he entered an Order taking that child from [Mother], and had directed [Mother] to come down, with no prior warning that when she got down there, he was going to take that child from her. That's what he did.

*Id*.

Father primary physical custody of S.G.G., and it dismissed Father's motion to show cause. Again, as it had in its previous orders, the Hampton Circuit Court relinquished jurisdiction of the case to Pennsylvania.[3] Specifically, the court "ORDERED, that all issues dealing with Custody, Visitation or Support of this child are hereby remanded to the appropriate court in Easton, Pennsylvania." Emergency Motion for Special Relief, 8/31/17, Exhibit B (unnumbered at 4).

Mother immediately filed a counseled emergency petition for special relief in Pennsylvania, in which she averred that Father signed S.G.G. out of school on August 28, 2017, and absconded with him.[4] At the same time, Mother filed a petition for modification of custody, requesting changes to the Virginia custody order. The Pennsylvania trial court conducted an emergency hearing on September 1, 2017. Following the hearing, on September 5, 2017, the trial court entered an order concluding that Virginia lacked jurisdiction to award primary physical custody of S.G.G. to Father, and vacating the August 31, 2017 order. The trial court directed that Father return S.G.G. to Pennsylvania immediately, and awarded primary physical custody to Mother.

_____

[3] On September 28, 2017, the Hampton Circuit Court entered a revised custody order retroactive to August 31, 2017, that corrected a typographical error in the prior order. On the same date, the court denied Mother's motion for reconsideration, and, again, remanded jurisdiction of the case to Pennsylvania.

[4] Mother attached a signed copy of the August 31, 2017 order to her Pennsylvania court filings.

- 4 -

The trial court conducted a full evidentiary hearing on September 19, 2017, and October 11, 2017, during which Mother, Father, and S.G.G. testified. On October 31, 2017, the trial court entered the order that is the genesis of this appeal. That order concluded once again that Virginia lacked jurisdiction over the parties' custody dispute, and awarded primary physical custody of S.G.G. to Mother during the school year. Father was awarded periods of partial physical custody on alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. During the summer months, the parties alternate custodial periods with Father exercising three consecutive weeks custody, followed by Mother's two weeks of custody. They share legal custody.

Father timely filed a notice of appeal and complied with the trial court's order directing him to file a concise statement of errors complained of on appeal within twenty-one days.[5] Father presents two issues claims for our review:

A. Did the [trial c]ourt abuse its discretion in vacating the Virginia Order and failing to afford it full faith and credit?

B. Did the [trial c]ourt err in substituting its judgment for the judgment of the Virginia Court?

---

[5] Father violated 1925(a)(2)(i) by failing to file a concise statement at the same time as his notice of appeal. However, since he complied with the trial court's subsequent Rule 1925(b) order, we decline to find waiver due to the technical misstep. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa.Super. 2009) (holding that appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims because there was no prejudice to any party).

Father's brief at 9.

Both of Father's claims challenge the Pennsylvania trial court's conclusion that Virginia lacked jurisdiction to enter the August 31, 2017 order, and its ability to vacate that order in favor of its own assessment of S.G.G.'s best interests. As these claims present a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **S.K.C. v. J.L.C.**, 94 A.3d 402, 408 (Pa.Super. 2014).

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. § 5401 *et seq.*, governs jurisdictional questions in interstate child custody disputes.[6] The UCCJEA's purpose is to "avoid jurisdictional competition, promote cooperation between courts, deter the abduction of children, avoid relitigating custody decisions of other states, and facilitate the enforcement of custody orders of other states." **A.L.-S. v. B.S.**, 117 A.3d 352, 356 (Pa.Super. 2015).

In this case, the parties and the trial court agree that Virginia retained jurisdiction to enter a custody order while Mother and S.G.G. continued to reside there. However, Father asserts that the trial court erred by concluding that Virginia lost jurisdiction after Mother and S.G.G. moved back to Pennsylvania. We focus our attention on § 5423 of the UCCJEA, which governs

---

[6] Pennsylvania and Virginia have both adopted the UCCJEA. **See** VA. Code § 20-146.1 *et seq*.

when a Pennsylvania trial court may modify a child custody order entered in a different state:

> Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not modify a child custody determination made by a court of another state unless a court of this Commonwealth has jurisdiction to make an initial determination under section 5421 (a)(1) or (2) (relating to initial child custody jurisdiction) and:
>
>> (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction under section 5422 (relating to exclusive, continuing jurisdiction) or that a court of this Commonwealth would be a more convenient forum under section 5427 (relating to inconvenient forum); or
>>
>> (2) a court of this Commonwealth or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

23 Pa.C.S. § 5423.

As the plain language of § 5423 demonstrates, a trial court in Pennsylvania may modify a custody order entered by a court of a different state if it determines that it has jurisdiction to render an initial child custody determination pursuant to § 5421(a)(1) or (2), and that the requirements of § 5423(1) or (2) are met. The UCCJEA provides, in relevant part, that a court may make an initial child custody determination under the following circumstances:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

> (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

> (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

23 Pa.C.S. § 5421(a)(1)-(2).[7]

---

[7] The UCCJEA defines a child's "home state" as follows:

**"Home state."** The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S. § 5402.

Upon review, it is clear that Pennsylvania became S.G.G.'s home state during September 2016, after he and Mother lived in the state for six months. Thus, as of that date, the Pennsylvania trial court had jurisdiction to make an initial child custody determination pursuant to § 5421(a)(1). Likewise, the procedural posture of this case satisfies the concomitant requirements of subsections 5423(1) and (2) relating to authority to modify a custody order entered in a different state. In relation to subsection (1), the Virginia court expressly remanded the case to Pennsylvania, *i.e.*, the Virginia court determined that "it no longer ha[d] exclusive, continuing jurisdiction." 23 Pa.C.S. § 5423(1). Similarly, the case satisfies the alternative condition pursuant to § 5423(2) because the certified record supports the Pennsylvania court's determination that neither Mother, Father, nor S.G.G., continued to reside in Virginia. **See** 23 Pa.C.S. § 5423(2) (condition satisfied when "a court of this Commonwealth . . . determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state"). Therefore, for all of these reasons, the Pennsylvania trial court had jurisdiction pursuant to § 5423, to modify the existing Virginia custody order.

Father does not confront the UCCJEA's controlling statutory provisions. Instead, he contends that Mother waived any challenge to Virginia's jurisdiction by requesting relief from the Virginia court and by participating in the custody proceedings in that jurisdiction without objection. **See** Father's brief at 17, 22-24, 27-28. Father further contends that Virginia had proper

jurisdiction at the time the custody proceedings commenced during 2014, and that jurisdiction remained in Virginia because the court did not enter a final order until August 31, 2017.  *Id*. at 17-19.  Father insists that the Virginia court's August 31, 2017 order was entitled to full faith and credit, and that the trial court in Pennsylvania erred by substituting its own judgment for the judgment of the Virginia court.  *Id*. at 17, 28-29.

Father's arguments do not lead us to reach a contrary result.  Our case law is clear that Mother could not waive her jurisdictional challenge by requesting relief from the Virginia court, or by participating in the custody proceedings there without objection.  The UCCJEA governs a court's subject matter jurisdiction to enter a child custody order, and it is well established that issues of subject matter jurisdiction are not susceptible to waiver.  ***Grimm v. Grimm***, 149 A.3d 77, 83 (Pa.Super. 2016).

Father's insistence that Virginia retained jurisdiction because it did not enter a final order until August 31, 2017, is equally undeserving of relief. Father is correct that courts must determine jurisdiction under the UCCJEA at the time a child custody proceeding commences, and that a court with proper jurisdiction at the time a proceeding commences will retain that jurisdiction until the proceeding concludes.  ***See*** 23 Pa.C.S. § 5422, Uniform Law Comment ("Jurisdiction attaches at the commencement of a proceeding.  If state A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving

- 10 -

out of the state prior to the conclusion of proceeding."). Thus, Father's statement of the law is accurate insofar as jurisdiction remained in Virginia at the time he filed his May 4, 2016 motion to amend the then-prevailing custody order entered on August 10, 2015, because S.G.G. had not yet resided in Pennsylvania for six months. Stated plainly, at that juncture, Pennsylvania was not S.G.G.'s home state, and the remaining requirements of § 5423 had not been met.

However, on August 31, 2017, when Mother filed her petition in Pennsylvania to modify the **final** custody order entered in Virginia earlier that day, the Virginia custody proceedings had concluded. Thus, the UCCJEA required the Pennsylvania trial court to assess whether it had jurisdiction as of the time Mother commenced this new proceeding in Pennsylvania. It is clear from our foregoing analysis of the UCCJEA's statutory framework that jurisdiction rested in Pennsylvania as of August 31, 2017. Indeed, as we previously noted, the Virginia courts expressly relinquished jurisdiction to Pennsylvania in several custody orders, including the August 31, 2017 order that Mother sought to modify in Pennsylvania.

Based on the foregoing, we conclude that Pennsylvania possessed jurisdiction over the parties' child custody dispute, which permitted the trial court to modify the Hampton Circuit Court's August 31, 2017 custody order and perform an independent assessment of S.G.G.'s best interests pursuant to §§ 5338(a) and 5328(a), relating to the modification of an existing custody

order and the factors to consider when awarding any form of custody, respectively. Therefore, we affirm the trial court's October 31, 2017 order awarding Mother primary physical custody of S.G.G.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/18